**SHELL OIL COMPANY, Plaintiff-Appellee,**

v.

**FOSTER-WHEELER CORPORATION, Defendant-Appellant.**

**No. 14104.**

United States Court of Appeals Seventh Circuit.

Aug. 1, 1963.

---

3. "NOTICE IS ALSO HEREBY GIVEN that all creditors or other persons who hold passbooks which have not been filed with the Court or who have *not filed claims* with this Court must file said claims with the U. S. Referee in Bankruptcy, 125 West Monroe, Phoenix, Arizona, on or before March 20, 1961, as any claim filed after March 20, 1961 will be subject to disallowance by the Court."

**592**

Paul Wagner, John M. Ferguson, Belleville, Ill., Wagner, Conner, Ferguson, Bertrand & Baker, East St. Louis, Ill., of counsel, for appellant.

William C. Dunham, John W. Leskera, Howard F. Boman, East St. Louis, Ill., Oehmke, Dunham, Boman & Leskera, East St. Louis, Ill., of counsel, for appellee.

Before HASTINGS, Chief Judge, CASTLE, Circuit Judge, and GRANT, District Judge.

GRANT, District Judge.

Appellee, Shell Oil Company, brought this action to recover from appellant, Foster-Wheeler Corporation, the amount which Shell was compelled to pay Golden Kennerly as a result of a judgment obtained by Kennerly against Shell. Each party filed a Motion for Summary Judgment. Defendant's Motion was denied. Plaintiff's Motion was granted and defendant, Foster-Wheeler, brought this appeal.

On April 7, 1953, Golden Kennerly, an employee of Foster-Wheeler, sustained injuries when he fell from a scaffold used in the construction of a new refinery on property of the plaintiff, Shell Oil Company. Kennerly sued Shell in the Circuit Court of St. Clair County, Illinois, charging willful violation of the Illinois Scaffold Act (Secs. 60–69, Chap. 48, Ill. Rev.Stat.) by knowingly permitting the erection of a scaffold which was not safe, without a guardrail, with loose boards, while the construction of the project was under the joint charge and control of Shell and Foster-Wheeler.

In its Answer Shell denied that it had, or exercised, any joint control with Foster-Wheeler, or any other construction companies, and further, answered that the work in question was being undertaken and done by Foster-Wheeler.

Shell, acting through its insurers, and its attorneys, tendered Foster-Wheeler the defense of said case, which was refused.

Shell Oil Company had engaged Foster-Wheeler to do a portion of the construction work on a distilling unit at its Roxana, Illinois refinery. The written contract, admitted in evidence at the trial and made a part of this proceeding, provided, under the heading "Scope of Work" that the contractor (Foster-Wheeler) shall diligently execute and perform the following work:

"The Contractor will provide mechanical design and prepare all drawings and specifications, and will furnish all labor and materials, ship, unload, deliver to site, suitably store all materials as required, construct and erect the complete 60,000 Bbl./Day Crude Distillation Unit at PURCHASER'S Wood River, Illinois, Refinery, in accordance with the attached EXHIBIT 'C,' entitled 'Description of 60,000 Bbl. Crude Distillation Unit, Wood River, Illinois Refinery, Shell Oil Co.,' dated Sep-

tember 13, 1951, and the addendum thereto entitled EXHIBIT 'D'."

Further provisions of the contract authorized Shell to inspect as the work progressed and for a final inspection before acceptance. The construction contract also provided that:

"The contractor shall enforce the Purchaser's instructions regarding photography, signs, advertisement, fires and smoking, and shall not trespass, nor unreasonably encumber the PURCHASER'S premises outside the site of erection, unloading and storage of materials."

The Illinois Scaffold Act (Secs. 60–69, Chap. 48, Ill.Rev.Stat.) under which that State Court action was brought, provided in pertinent part, as follows:

"Any owner, contractor, sub-contractor, foreman or other person *having charge of* the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structures within the provision of this act, shall comply with all the terms thereof." (Emphasis supplied.)

At the close of the evidence in the case, the Court, at Kennerly's request, instructed the jury in the language of the above statute. The Court, however, refused to give Shell's proffered instruction numbered 11, reading as follows:

"The Court instructs the jury that before the plaintiff can recover in this case he must prove that Shell Oil Company, the defendant, *had charge of* the erection or construction of the refining unit in question before the terms of the Statute shall apply to said defendant." (Emphasis supplied.)

The jury returned a verdict for Kennerly for $77,000.00. Shell appealed and the Illinois Supreme Court affirmed. (Kennerly v. Shell Oil Company, 13 Ill.2d 431, 150 N.E.2d 134.)

Following payment of that judgment Shell brought this action against Foster-Wheeler. It was originally filed in the Circuit Court of St. Clair County, Illinois, then removed to the United States District Court for the Eastern District of Illinois.

In this action Shell contends that Foster-Wheeler was guilty of active violation of the Scaffold Act, but that any claimed acts or omissions of Shell bear, at the most, but a passive relationship to the cause of injury. The Complaint alleges that the injury to Kennerly was produced solely through negligence on the part of the defendant, Foster-Wheeler; that Foster-Wheeler was primarily negligent and that Shell should be reimbursed for the expenditures made by it to Kennerly in the original action.

The pertinent portions of the several defenses set forth in Foster-Wheeler's answer herein were summarized by the District Court as follows:

"* * * in its third defense (Foster-Wheeler) alleges that Shell failed to comply with the Act; that Shell was the owner and that the buildings were jointly occupied and controlled by Shell and Foster-Wheeler; that Foster-Wheeler was controlled and directed by Shell; that the effect of the general verdict was to find Shell guilty of all charges made in the amended complaint; that the charges made by Shell in the instant case are the same charges made against Shell by Kennerly; and that Shell was a joint tort-feasor.

"By its fourth defense it alleges that Kennerly's amended complaint charged Shell as being the owner, jointly occupying the building with Foster-Wheeler and controlling and directing the construction thereof; that the effect of the general verdict was to find Shell guilty of all charges; that Shell had actual knowledge that the scaffold was defective; and that the effect of the verdict was finding Shell guilty of active negligence.

"The fifth defense alleges that Kennerly's amended complaint

charges Shell with willfully and knowingly failing to comply with the Act and jointly occupying and controlling the building with Foster-Wheeler; that the effect of the general verdict was to find Shell guilty of all charges; that the jury had evidence that Kennerly informed Shell that the scaffold was dangerous; and that the verdict was in effect finding Shell guilty of active negligence.

"By its sixth defense the defendant says that Kennerly's amended complaint charges that Shell failed to comply with the Act and jointly occupied and controlled the building with Foster-Wheeler and Foster-Wheeler was controlled by Shell; that the effect of the general verdict was to find Shell guilty of all charges; that the Act imposed a nondelegable duty upon the owner and grants no right of indemnity or subrogation or contribution."

All of the record was stipulated and each party filed a Motion for Summary Judgment. The District Court found for the plaintiff, 209 F.Supp. 931. From that judgment the defendant brought this appeal.

We are asked to decide: (1) Whether Kennerly v. Shell Oil Company, 13 Ill. 2d 431, 150 N.E.2d 134, is res judicata of this proceeding, and (2) whether the rule against indemnity between tortfeasors applies between parties, one of whom is the active and primary wrongdoer and the other bears but a passive relationship to the cause of the injury.

The District Court answered both questions in the negative and we are in full agreement with that position, so ably set forth in the reported case, 209 F. Supp. 931.

■ That opinion of Judge Juergens is an exhaustive analysis of all the prior proceedings and a well-reasoned analysis of the applicable law. We fully approve of and concur in the determination of the case on the grounds and for the reasons so well expressed by the

District Court. We adopt the opinion of the District Court as our own in the disposition of this appeal.

For the reasons set out in 209 F.Supp. 931, supra, the judgment appealed from is affirmed.

Affirmed.